IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

PATRICIA A. LYLES, an individual;

      *Plaintiff*,

v.
                              Civil Action No. 2:17-cv-01974
                              Hon. Thomas E. Johnston

FTL LTD., INC., a West
Virginia corporation; and
NATIONAL CASUALTY COMPANY,
An Arizona corporation,

      *Defendants*.

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT
NATIONAL COMPANY'S MOTION FOR SUMMARY JUDGMENT[1]

COMES NOW Plaintiff, Patricia A. Lyles ("Plaintiff"), by counsel, Scott S. Segal, Jason

P. Foster and the Segal Law Firm, L.C., and submits the following Response in Opposition to

Defendant National Casualty Company's Motion for Summary Judgment.

**A.**      **Coverage is available under the clear and unambiguous terms of the
MCS-90 Endorsement.**

In its Motion for Summary Judgment, National Casualty Company ("NCC") correctly

states that federal law governs the interpretation of the MCS-90 Endorsement. However, in its next

breath, NCC completely disregards controlling federal law to arrive at an improper conclusion.

According to federal law, if the terms of contract are clear and unambiguous, the terms are applied

according to their ordinary meaning. See *Indoor Billboard Northwest, Inc. v. M2 Sys. Corp.*, 922

F. Supp. 2d 1154, 1161 (D. Ore. 2013). Additionally, as noted in *Wheeler v. Dynamic Eng'g*, 62

---

[1] Plaintiff notes her Motion to Remand [Doc. No. 5] is currently pending and that the filing of this Response in Opposition to Defendant National Casualty Company's Motion for Summary Judgment constitutes compliance with the Court's Order and Notice and is not a waiver of her the jurisdictional arguments set forth in her Motion to Remand.

F.3d 634, 638 (1995), the federal common law of contracts may borrow from state common-law principles. Notably, each of the principles of contract interpretation identified in *Indoor Billboard* under the federal common law can be found also in the common law of West Virginia:

> In West Virginia, insurance policies are controlled by the rules of construction that are applicable to contracts generally. We recognize the well-settled principle of law that this Court will apply, and not interpret, the plain and ordinary meaning of an insurance contract in the absence of ambiguity or some other compelling reason. Our primary concern is to give effect to the plain meaning of the policy and, in doing so, we construe all parts of the document together. We will not rewrite the terms of the policy; instead, we enforce it as written.

*Payne v. Weston*, 195 W. Va. 502, 507, 466 S.E.2d 161 (1995) (internal citations omitted).

Based on the foregoing case law, the Court must first determine whether or not any terms of the MCS-90 Endorsement are ambiguous. None of the parties to this action have such a claim as the terms of the MCS-90 Endorsement are clear and unambiguous. Thus, the Court need not, and cannot, look beyond the four corners of the MCS-90 Endorsement.

According to its clear and unambiguous terms, the MCS-90 Endorsement provides coverage in the event of: (1) negligent operation, maintenance or use of a motor vehicle; (2) where the motor vehicle at issue is subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carriers Act; and (3) negligence that occurs <u>on</u> <u>any</u> <u>route</u> or in any territory authorized to be served by the insured or elsewhere. NCC asks this Court to alter the clear and unambiguous terms of the third requirement by restricting application of the MCS-90 Endorsement to "any <u>interstate</u> route." Under controlling principles of federal common law, the Court is required to reject NCC's argument and apply the terms of the MCS-90 Endorsement as written.

**B.** **Coverage is available under the MCS-90 Endorsement because the lease between FTL and K&K Trucking was procured for the transportation of property in interstate commerce.**

In addition to improperly interpreting the plain and unambiguous terms of the MCS-90 Endorsement, NCC is also misinterprets the federal regulations behind the Endorsement. As stated by the Supreme Court of the United States in *Duncan v. Walker*, 533 U.S. 167, 121 S. Ct. 2120 (2001):

> "It is our duty 'to give effect, if possible, to every clause and word of a statute.' " *United States v. Menasche*, 348 U.S. 528, 538-539, 99 L. Ed. 615, 75 S. Ct. 513 (1955) (quoting *Montclair v. Ramsdell*, 107 U.S. 147, 152, 27 L. Ed. 431, 2 S. Ct. 391 (1883)); *see also Williams v. Taylor*, 529 U.S. 362, 404, 146 L. Ed. 2d 389, 120 S. Ct. 1495 (2000) (describing this rule as a "cardinal principle of statutory construction"); *Market Co. v. Hoffman*, 101 U.S. 112, 115, 25 L. Ed. 782 (1879) ("As early as in Bacon's Abridgment, sect. 2, it was said that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant' "). We are thus "reluctant to treat statutory terms as surplusage" in any setting. *Babbitt v. Sweet Home Chapter, Communities for Great Ore.*, 515 U.S. 687, 698, 132 L. Ed. 2d 597, 115 S. Ct. 2407 (1995); *see also Ratzlaf v. United States*, 510 U.S. 135, 140, 126 L. Ed. 2d 615, 114 S. Ct. 655 (1994).

*Duncan* at 174.

The relevant federal statute at issue in the case at bar is 49 USCS § 13501, which states as follows:

> The Secretary and the Board have jurisdiction, as specified in this part [49 USCS §§ 13101 et seq.], over transportation by motor carrier **and the procurement of that transportation, to the extent that** passengers, **property**, or both, are transported by motor carrier--
> (1)  between a piace in--
>    (A)  a State and a place in another State;
>    (B)  a State and another place in the same State through another State;
>    (C)  the United States and a place in a territory or possession of the United States to the extent the transportation is in the United States;
>    (D)  the United States and another place in the United States through a foreign country to the extent the transportation is in the United States; or
>    (E)  the United States and a place in a foreign country to the extent the transportation is in the United States; and

(2) in a reservation under the exclusive jurisdiction of the United States or on a public highway.

Emphasis added. NCC argues that the MCS-90 Endorsement does not apply in this case by focusing on the phrase "transportation by motor carrier" and completely ignoring the subsequent phrase, joined by the conjunctive term "and," "the procurement of that transportation." In essence, NCC invites this Court to reject bedrock principles of statutory interpretation and render the phrase "the procurement of that transportation" superfluous, void, or insignificant. As with NCC's invitation to disregard basic principles of contract interpretation, the Court should also refuse NCC's invitation to ignore well-settled principles of statutory interpretation.

NCC's argument against application of the MCS-90 Endorsement to the collision in the underlying action also ignores another rule of statutory interpretation: remedial statutes are to be interpreted broadly. As noted in *Reliance Nat'l Ins. Co. v. Royal Indem. Co.*, 2001 U.S. Dist. LEXIS 12901, 2001 WL 984737 (S.D.N.Y. 2001):

> Although the ICC's jurisdiction over transport is not unlimited, "the Interstate Commerce Act is a highly remedial statute and its terms are broadly comprehensive enough to bring within them all of those who, no matter what form they use, are in substance engaged in the business of transportation of property on the public highways for hire." *I. C. C. v. Interstate Auto Shippers, Inc.*, 214 F. Supp. 473, 476 (S.D.N.Y. 1963) (citing *Georgia Truck System, Inc. v. I.C.C.*, 123 F.2d 210, (5th Cir. 1941)). Accordingly, "the Act being a remedial statute, it should be liberally interpreted to effect its evident purpose." *I.C.C. v. Dudgeon*, 213 F. Supp. 710, 714 (D.C.Cal. 1961) (citing *McDonald v. Thompson*, 305 U.S. 263, 83 L. Ed. 164, 59 S. Ct. 176 (1938*); Piedmont and N. Ry. Co. v. I.C.C.*, 286 U.S. 299, 311, 52 S. Ct. 541, 76 L. Ed. 1115 (1931) ("The Transportation Act was remedial legislation, and should therefore be given a liberal interpretation....").

*Reliance* at 13. See also *Canal Ins. Co. v. Distribution Servs.*, 320 F.3d 488, 489 (4th Cir. 2003) (stating that ". . . **one remedial measure provided in the MCA** is a liability insurance requirement imposed upon each motor carrier registered to engage in interstate commerce, which requirement mandates that a motor carrier file 'a bond, insurance policy, or other type of security' in an amount

determined by the Secretary of Transportation and the laws of the State or States in which the motor carrier intends to operate.") (Emphasis added).

Each of the cases cited by NCC in support of the narrow interpretation of the applicability of the MCS-90 Endorsement have one thing in common: none of them have facts that are even remotely similar to those in the case at bar. For example, in *Canal Ins. Co. v. Coleman*, 625 F.3d 244, (5th Cir. 2010), the trucking accident giving rise to that case occurred after the truck driver completed work for the day and was returning home for the day in a bobtail configuration (i.e., the trailer was not attached to the tractor).   In fact, the collision occurred as the truck driver was backing into his own driveway. Under the facts of that case, the U.S. Court of Appeals for the Fifth Circuit determined that the MCS-90 endorsement did not apply because the endorsement applies only to liability incurred during the transportation of property and it was undisputed that the truck driver was not transporting property at the time of collision. Thus it was unnecessary for the U.S. Court of Appeals for the Fifth Circuit to analyze the interstate/intrastate nature the lease agreement and the opinion is completely bereft of any factual or legal analysis of the lease agreement's procurement.

Neither the facts nor the law at issue in *Nat'l Specialty Ins. Co. v. Martin-Vegue*, 644 Fed. Appx. 900 (11th Cir. 2016), have any application to case at bar. In *Martin-Vegue*, a truck driver hauling beach pebbles from California to Florida was involved in a multi-vehicle collision in Florida that caused the death of Martin-Vegue. Martin-Vegue's widow filed suit against the truck driver and ABS Transport, Inc. ("Transport"), which she believed was the motor carrier. Transport's insurer then filed a declaratory judgment action in federal court arguing that the proper motor carrier was ABS Freight Transportation, Inc. ("Freight"), which was also had an insurance policy with the insurer. Transport's liability policy limits had been tendered in the underlying

action but the widow claimed that she was also entitled to a recovery under Freight's policy as well. The District Court granted summary judgment to the insurer and the widow appealed. The ruling was affirmed on appeal as all of the evidence showed that Transport was the correct motor carrier, Transport met all financial responsibility requirements and Freight had no involvement with the shipment of the pebbles.

*Lyons v. Lancer Ins. Co.*, 681 F.3d 50 (2nd Cir. 2012), while factually distinguishable from the case at bar is legally significant because the Second Circuit explicitly recognized the application of the MCS-90 endorsement to both interstate transportation and the procurement of that transportation. In that case, a bus driver, employed by T.F.D. Bus Company ("TFD"), was transporting students from school on a wholly intra-state route and collided with a car stopped at a stoplight. As a result of the collision, the driver of the other car (and his wife) filed a personal injury action TFD and were awarded a significant judgment that TFD was unable to satisfy. The plaintiffs then filed a declaratory judgment action against one TFD's insurer regarding the application of a MCS-90B endorsement (which is analogous to the MCS-90 endorsement but applies to the transportation of passengers) to the underlying personal injury action. The District Court granted summary judgment to the insurer, finding that the bus not operating in interstate commerce at the time of the collision and the plaintiffs appealed.

On appeal, the plaintiffs argued that the MCS-90B endorsement should apply because on the day of the collision the bus was originally scheduled to pick up senior citizens from a place in New York, with the most efficient route taking the bus through Connecticut. While the mix up in the assignment of the bus was unclear, the bus driver testified that he had been employed by TFD for some 20 years and while he did charter from time to time, his regular route involved the transportation of students within the city of Yonkers, New York.

6

In affirming the District Court's ruling, the U.S. Court of Appeals for the Second Circuit first noted that " [n]either party has called to our attention any cases--nor are we aware of any--dealing with the applicability of an MCS-90B endorsement in circumstances such as those at issue here, where a carrier's vehicle was involved in an accident while performing a contract that called for travel solely intrastate and where the carrier had an unrelated contract that would likely involve travel between two places in the same State over a route passing through a second State." *Lyons* at 57. The Court of Appeals further found that summary judgment in the insurer's favor was appropriate because the evidence showed that even if TFD had planned to use its bus to transport students earlier in the day and senior citizens later in the same day, two trips would have been necessary and the collision occurred during the intrastate transportation of the students.

The Court of Appeals then analyzed the plaintiffs' argument that the MCS-90B endorsement should apply under the "procurement" analysis discussed in *Reliance*, *supra*, first noting that Reliance was neither binding nor did it bear a significant similarity to the case sub judice. The Court of Appeals then explained that:

> In Reliance, the district court was called on principally to unravel the interrelated obligations of five insurance companies with regard to various theories of vicarious liability where an "interstate carrier" had "sign[ed] an exclusive lease with a trucker" for the trucker's services "to perform interstate transport" for some six months using his own tractor and a trailer provided by the interstate carrier; and the tractor-trailer, displaying the carrier's interstate permit, was involved in an accident "while the trucker perform[ed] a single intrastate transport," 2001 U.S. Dist. LEXIS 12901, 2001 WL 984737, at *6. The insurer for the carrier disclaimed coverage for the trucker on the ground that the accident occurred on a trip that was wholly intrastate. However, as the intrastate trip was aberrational, the court ruled that the proper focus was not on that trip but rather on the relationship between the trucker and the carrier, see 2001 U.S. Dist. LEXIS 12901, [WL] at *4, and that the carrier's insurer's MCS-90 endorsement covered the trucker because it was "clear that [the carrier] intended to procure [the trucker]'s services for interstate transport," 2001 U.S. Dist. LEXIS 12901, [WL] at *6.

*Lyons* at 60. Significantly, the U.S. Court of Appeals for the Second Circuit neither rejected nor criticized the "procurement" analysis utilized in Reliance, but rather factually distinguished it from the analysis in the *Lyons* case.

Similarly, *Century Indem. Co. v. Carlson*, 133 F.3d 591 (8th Cir. 1998), provides no support for NCC's argument that *Reliance*'s procurement analysis is improper. In that case, a farmer used a motor carrier to transport corn to a river terminal over a wholly intrastate route. During one such delivery, one of the motor carrier's trucks was involved in a collision that killed the driver of the other vehicle. The motor carrier had two insurance policies: one which covered the trucks used only in intrastate commerce (that specifically identified each insured truck) and the other which covered trucks used in interstate commerce (that did not identify covered trucks specifically). The second policy contained an MCS-90 endorsement, applicability of which was the subject of a declaratory judgment action filed by motor carrier's insurer.

The District Court ruled in favor of the insurer because the trip at issue was wholly intrastate. After examining the "essential character" of the shipment from the shipper's intent, the U.S. Court of Appeals for the Second Circuit reversed the District Court's ruling finding that even though the trip from the farm to the river terminal was intrastate, the ultimate destination of 99% of the corn leaving from the river terminal was located out-of-state.

While factually distinguishable from the case at bar, Carlson is legally significant because the U.S. Court of Appeals rejected the narrow "single intrastate trip" analysis offered by the insurer. Instead, the Court of Appeals used a broader analysis to find coverage under MCS-90 endorsement because the corn, while initially transported in intrastate commerce, was ultimately bound for interstate commerce. Even though there was no lease contemplating the interstate transportation of property, actual interstate transportation of property or the loaning of USDOT

numbers ICC logos as in the case at bar, the U.S. Court of Appeals for the Second none-the-less interpreted application of the MCS-90 broadly under the same "procurement" analysis utilized in *Reliance*, *supra*.

The same factual differences run through all of the cases cited by NCC. In *Martinez v. Empire Fire & Marine Ins. Co.*, 151 Conn. App. 213, 94 A.3d 711 (2014), a towing company's tow truck, insured under a policy containing an MCS-90 endorsement, was involved in a collision during a wholly intrastate trip while travelling to pick up motor vehicle parts for use in other vehicles owned by the towing company. In finding that the MCS-90 endorsement did not apply to the collision, the Court found that the tow truck was engaged in a personal errand and therefore not operating in a "for-hire" capacity at the time of the collision.

*Brunson v. Canal Ins. Co.*, 602 F. Supp. 2d 711 (D.S.C. 2007), presented a similar fact pattern. A tractor trailer subject to an MCS-90 endorsement was involved in a collision while the driver of the tractor trailer was taking a personal trip to try to sell the tractor trailer and was therefore not operating in a "for-hire" capacity at the time of the collision thereby precluding coverage under the MCS-90 endorsement. Moreover, the facts indicated that the tractor trailer had not travelled outside of the state in two years.

The same can be said of *Northland Ins. Co. v. Top Rank Trucking of Kissimmee, Inc.*, 2013 U.S. Dist. LEXIS 130961 (M.D. Fl. 2013). In that case, the driver of a truck subject to an MCS-90 endorsement was using the truck to travel to pay his personal light bill. Thus, there was no coverage under the MCS-90 endorsement.

While the collision at issue in *Canal Ins. Co. v. J. Perchak Trucking, Inc.*, 2009 U.S. Dist. LEXIS 28932 (M.D. Pa. 2009), did apparently involve transportation of property in a "for-hire" capacity, the District Court noted that "[n]either party has presented any factual premise for

deciding whether the tractor trailer was moving in interstate or intrastate commerce at the time of the accident." As a result of this deficiency, the District Court deferred ruling on the matter.

*Gen. Sec. Ins. Co. v. Barrentine*, 829 So. 2d 980 (2002), is equally unhelpful. While that case involved a collision that occurred on a wholly intrastate route, there was no evidence that the truck insured under the policy containing the MCS-90 endorsement was being operated pursuant to an interstate lease agreement or had previously transported property in interstate commerce.

In *Kolencik v. Progressive Preferred Ins. Co.*, 2006 U.S. Dist. LEXIS 24855 (N.D. Ga. 2006), the motor carrier did not even have authority to operate in interstate commerce. Thus, even though the trip at issue was wholly intrastate, there was interstate component to any trip taken by the subject truck.

The review of the foregoing case law shows that none of the cases cited by NCC in support of its "trip-specific" analysis counsel against or even invalidate the "procurement analysis." This makes sense because none of the cases cited by NCC involve a truck operating under an interstate trucking lease, using the UDSDOT number and ICC logo of the lessor motor carrier, in a for-hire capacity at the time of the collision while traveling on an intrastate route. There is one case that meets all of these factual points: *Reliance, supra.* And the *Reliance* "procurement" argument controls in this case compelling a finding that the MCS-90 Endorsement provides coverage in the underlying personal injury action.

C.   **Coverage is available under the MCS-90 Endorsement because NCC has no other insurance that provides coverage for the underlying personal injury action.**

As anticipated, NCC argues that there is no coverage under the MCS-90 Endorsement because Plaintiff already payment under K&K Trucking's liability insurance policy. This argument is flawed for two reasons. First, coverage under the MCS-90 Endorsement is triggered

when ". . . when the insurance policy to which the MCS-90 endorsement is attached otherwise provides no coverage to the insured." *Canal Ins. Co. v. Distribution Servs.*, 320 F.3d 488, 490 (2003).[2] It is undisputed in this case that the policy to which the MCS-90 Endorsement is attached otherwise provides no coverage for FTL. Thus, even if FTL were legally entitled to claim credit for the payment made by K&K Trucking's liability to Plaintiff (which it cannot pursuant to W. Va. Code § 24A-6-7(a)), it would not change the fact that FTL possessed no other policy that applies to the underlying personal injury action thereby triggering coverage under the MCS-90 Endorsement.

### D.   The Settlement Agreement in the underlying action does not require Plaintiff to reimburse FTL for payments made under the MCS-90 Endorsement.

NCC stubbornly persists in its misguided argument that the Settlement Agreement in the underlying action somehow requires Plaintiff to reimburse NCC for any payments made pursuant to the MCS-90 Endorsement. Any argument that Plaintiff somehow voluntarily undertook FTL's potential obligation to reimburse National Casualty for any payments made under MCS-90 would negate the entire Settlement Agreement. Specifically, formal settlement negotiations began on July 6, 2016, by letter from counsel for FTL, Inc., and K&K Trucking to Plaintiff's counsel (attached hereto as Exhibit 1). This letter detailed the terms of the settlement agreement for Plaintiff's claims against said Defendants in the underlying personal injury action. Plaintiff's counsel replied by letter dated July 11, 2016 (attached hereto as Exhibit 2), stating that Plaintiff was agreeable to the terms of the settlement agreement and requesting a clarification and certain assurances regarding

---

[2] Even if this Court accepts the test announced in *Carolina Cas. Ins. Co. v. Yeates*, 584 F.3d 868 (10th Cir. 2009), the same result pertains. Under *Yeates*, ". . . an insurer's obligation under the MCS-90 endorsement is not triggered unless (1) the underlying insurance policy (to which the endorsement is attached) does not provide liability coverage for the accident, and (2) the carrier's other insurance coverage is either insufficient to meet the federally-mandated minimums or non-existent." In the present case: 1) the policy to which the MCS-90 Endorsement is attached provides no coverage for the underlying accident; and 2) FTL has no other insurance applicable to the underlying accident.

insurance coverage. After consulting by telephone, Plaintiff's counsel sent FTL, Inc., and K&K Trucking's counsel an email on July 28, 2016 (attached hereto as Exhibit 3), again seeking to amend the terms of the settlement agreement. Counsel for FTL, Inc., and K&K Trucking responded by letter dated August 18, 2016 (attached hereto as Exhibit 4), detailing the revised terms of the settlement agreement and requesting written confirmation of the agreement and conditions.

After consulting again by telephone, Plaintiff's counsel sent FTL, Inc., and K&K Trucking's counsel an email on August 22, 2016 (attached hereto as Exhibit 5), again seeking to amend the terms of the settlement agreement. Counsel for FTL, Inc., and K&K Trucking responded by letter dated August 29, 2016 (attached hereto as Exhibit 6), detailing the revised terms of the settlement agreement and requesting written confirmation of the agreement and conditions.

After further conversation, counsel for Defendant FTL, Inc., and K&K Trucking sent Plaintiff's counsel an updated letter dated September 20, 2016 (attached hereto as Exhibit 7), detailing the terms of the settlement agreement.

A final round of discussions was had and on October 4, 2016, counsel for FTL, Inc. and K&K Trucking sent Plaintiff's counsel a letter detailing the final terms of the settlement agreement ((attached hereto as Exhibit 8). On October 5, 2016, Plaintiff's counsel sent a letter to counsel for Defendant FTL, Inc., and K&K Trucking agreed to the terms and conditions set forth in the October 4, 2016 letter (attached hereto as Exhibit 9).

Plaintiff's counsel served discovery on FTL, Inc., in the underlying action on September 2, 2016 seeking, among other things, all insurance policies which may be available to FTL, Inc., to satisfy all or part of a judgment. Plaintiff received FTL, Inc.'s discovery responses on October

17, 2017: two weeks after the parties agreed to the terms of the Settlement Agreement. Enclosed with FTL, Inc.'s discovery responses was the policy at issue in this declaratory judgment action. This was the first time Plaintiff was made aware of the presence of MCS-90 coverage form; therefore, NCC's right of reimbursement under the Form MCS-90 was never contemplated during the negotiation of the terms of the Settlement Agreement. Thus Plaintiff was not aware of National Casualty's right of reimbursement from FTL.

To the extent that NCC pursues its argument that Plaintiff agreed to reimburse NCC for payments it makes on behalf of FTL under the MCS-90 Endorsement before Plaintiff ever received FTL's policy, there was never a meeting of the minds between Plaintiff and FTL. "A meeting of the minds of the parties is a sine qua non of all contracts." Syl. Pt. 2 of *Triad Energy Corp. of W. Va., Inc. v. Renner*, 215 W. Va. 573, 600 S.E.2d 285 (2004). Consequently, a contract embodying any term requiring Plaintiff to reimburse NCC insurer does not exist.

Furthermore, NCC's claim that the Settlement Agreement allows NCC to recover the money it pays to FTL under the MCS-90 Endorsement from Plaintiff produces an absurd result in light of the fact that the limited Settlement Agreement specifically provides that FTL is released only beyond the limits of any applicable insurance. "It is not the right or province of a court to alter, pervert or destroy the clear meaning and intent of the parties as expressed in unambiguous language in their written contract or to make a new or different contract for them." Syl. Pt. 3 of *Cotiga Dev. Co. v. United Fuel Gas Co.*, 147 W. Va. 484, 128 S.E.2d 626 (1962); *see also Dunbar FOP, Lodge 119 v. City of Dunbar*, 218 W. Va. 239, 244, 624 S.E.2d 586 (2005) (stating that "[g]enerally, [the Supreme Court of Appeals of West Virginia] will not interpret a contract in a manner that creates an absurd result."). To highlight the absurdity of NCC's argument, K&K Trucking's insurer could, under the reimbursement provision, suddenly seek reimbursement from

K&K Trucking for the payment to Plaintiff under K&K Trucking's liability policy. Such a ludicrous interpretation of the reimbursement provisions would render the entire Settlement Agreement illusory and unenforceable.

Additionally, it is the explicit policy of the regulations behind MCS-90 Endorsement to provide a source of recovery for members of the public who are injured by negligent motor carriers where insurance coverage is insufficient to compensate the injuries. Any argument that NCC could recover an MCS-90 payment made on behalf of FTL from Plaintiff runs counter to the public policy behind the regulation. See Syllabus Point 3 of *Finch v. Inspectech*, LLC, 229 W. Va. 147, 727 S.E.2d 823 (2012) stating, in part, that "[w]hen an express agreement is freely and fairly made, between parties who are in an equal bargaining position, and there is no public interest with which the agreement interferes, it generally will be upheld."[3]

Even if NCC could claim a right of reimbursement under the Settlement Agreement, the made-whole rule would apply and Plaintiff would not be required to reimburse NCC for the payment unless and until she is made whole. "Under general principles of equity, in the absence of statutory law or valid contractual obligations to the contrary, an insured must be fully compensated for injuries or losses sustained (made whole) before the subrogation rights of an insurance carrier arise." Syl. Pt. 3 of *Kanawha Valley Radiologists, Inc. v. One Valley Bank, N.A.*, 210 W. Va. 223, 557 S.E.2d 277 (2001). The Court went on to state that "[i]ndeed, subrogation is an equitable principle and, as such, the general rules of equity, including the made-whole rule, will apply regardless of whether the subrogation arises from common law or by contract, unless a contrary agreement is clearly and expressly stated." *Id.* at p. 228. The Settlement Agreeement includes no clear and express waiver of the made-whole rule nor would any plaintiff ever agree to

---

[3] Additionally, NCC's claimed right of reimbursement is void and unenforceable under W. Va. Code § 24A-6-7(a).

14

such a waiver. Based on the facts and law above, NCC's claim for reimbursement, even if valid, does not preclude application of the MCS-90 Endorsement to the underlying personal injury action.

WHEREFORE, for the foregoing reasons, and those set forth in the Memorandum of Law accompanying Plaintiff's Motion for Summary Judgment, Plaintiff respectfully requests that the Court find that the Form MSC-90 Endorsement provides coverage for Plaintiff's claim in the underlying personal injury action and award Plaintiff attorney fees incurred herein.

*Respectfully submitted,*

**PATRICIA A. LYLES,**

**Plaintiff,**

**By Counsel**:

_s/ Jason. P. Foster_
Scott S. Segal (WV Bar I.D. #4717)
Jason P. Foster (WV Bar I.D. #10593)
**THE SEGAL LAW FIRM**
**A Legal Corporation**
810 Kanawha Boulevard, East
Charleston, West Virginia 25301
Telephone: (304) 344-9100
Facsimile:  (304) 344-9105

## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA
## CHARLESTON DIVISION

PATRICIA A. LYLES, an individual;
    *Plaintiff,*

v.
                                    Civil Action No. 2:17-cv-01974
                                    Hon. Thomas E. Johnston

FTL LTD., INC., a West
Virginia corporation; and
NATIONAL CASUALTY COMPANY,
An Arizona corporation,
    *Defendants.*

## CERTIFICATE OF SERVICE

    I, Jason P. Foster, counsel for the Plaintiff, do hereby certify that on this the 21st day of December, 2017, I electronically filed the foregoing *Plaintiff's Response in Opposition to Defendant National Company's Motion for Summary Judgment* using the CM/ECF system which will send notification of such filing to the following counsel of record:

Lee Murray Hall, Esq.
Sarah A. Walling, Esq.
Kierston Eastham Rosen, Esq.
**JENKINS FENSTERMAKER, PLLC**
P.O. Box 2688
Huntington, WV 25726-2688
*Counsel for National Casualty Company*

Thomas H. Peyton, Esq.
**PEYTON LAW FIRM, PLLC**
2801 First Avenue, P.O. Box. 216
Nitro, WV 25143
*Counsel for FTL, Ltd., Inc.*

Scott McMickle, Esquire
**MCMICKLE KUREY & BRANCH, LLP**
200 South Main Street
Alpharetta, GA 30009
    *Counsel for National Casualty Company*

                          *s/ Jason P. Foster*
                    Scott S. Segal (WV Bar I.D. #4717)
                    Jason P. Foster (WV Bar I.D. #10593)
                    **THE SEGAL LAW FIRM**
                    **A Legal Corporation**
                    810 Kanawha Boulevard, East
                    Charleston, West Virginia 25301
                    Telephone: (304) 344-9100
                    Facsimile:  (304) 344-9105