IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

PATRICIA A. LYLES, an individual;

    *Plaintiff,*

v.
                                    Civil Action No. 2:17-cv-01974
                                    Hon. Thomas E. Johnston

FTL LTD., INC., a West
Virginia corporation; and
NATIONAL CASUALTY COMPANY,
An Arizona corporation,

    *Defendants.*

PLAINTIFF'S REPLY TO DEFENDANT NATIONAL CASUALTY
COMPANY'S RESPONSE IN OPPOSITION TO PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT[1]

COMES NOW Plaintiff, Patricia A. Lyles ("Plaintiff"), by counsel, Scott S. Segal, Jason

P. Foster and the Segal Law Firm, L.C., and submits the following Reply to Defendant National

Casualty Company's Response in Opposition to Plaintiff's Motion for Summary Judgment.

Defendant National Casualty Company ("NCC") attempts to avoid its obligations under

the MCS-90 Endorsement by attempting to make a very simple analysis overly complicated. To

determine coverage under the MSC-90 Endorsement, the Court need not look beyond the text of

the Endorsement itself. *See Indoor Billboard Northwest, Inc. v. M2 Sys. Corp.,* 922 F. Supp. 2d

1154, 1161 (D. Ore. 2013)(stating that "[u]nder the general principles of contract interpretation,

'[c]ontract terms are to be given their ordinary meaning, and when the terms of a contract are clear,

---

[1] Plaintiff notes her Motion to Remand [Doc. No. 5] is currently pending and that the filing of this Reply to Defendant National Casualty Company's Response in Opposition to Plaintiff's Motion for Summary Judgment constitutes compliance with the Court's Scheduling Order and is not a waiver of her the jurisdictional arguments set forth in her Motion to Remand.

the intent of the parties must be ascertained from the contract itself.' ")(internal citations omitted); *see also Payne v. Weston*, 195 W. Va. 502, 507, 466 S.E.2d 161 (1995) (stating same).

Pursuant to its clear and unambiguous terms, the MCS-90 Endorsement applies in the event of: (1) negligent operation, maintenance or use of a motor vehicle; (2) where the motor vehicle at issue is subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carriers Act; and (3) that negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere. *See* [Doc. No. 26-11]. Because Plaintiff has alleged in the underlying action that she was injured by the negligent operation of the Subject Truck, the Subject Truck was subject to Sections 29 and 30 of the Motor Carriers Act, and the collision occurred on a route authorized by the Trucking Agreement, the MCS-90 Endorsement applies to collision at issue in the underlying action.

To the extent that the Court is inclined to look beyond the four corners of the MCS-90 Endorsement, the governing statute and federal case law regarding the application of the Endorsement to an intrastate trip taken by a vehicle subject to an interstate transportation contract demonstrates that coverage is available under the Endorsement. According to 49 USCS § 13501, "[t]he Secretary and the Board have jurisdiction, as specified in this part [49 USCS §§ 13101 et seq.], over transportation by motor carrier **and the procurement of that transportation**, to the extent that passengers, property, or both, are transported by motor carrier-- (1) between a place in- - (A) a State and a place in another State . . ." (Emphasis added). Thus, ICC regulations apply to not only single trips involving interstate commerce, but also to any trip that is subject to a lease agreement procured for the purpose of transporting property in interstate commerce. *See Reliance Nat'l Ins. Co. v. Royal Indem. Co.*, 2001 U.S. Dist. LEXIS 12901, 2001 WL 984737 (S.D.N.Y. 2001).

In the present case, it is undisputed that the Trucking Agreement contemplated the transportation of property in interstate commerce and property was indeed transported in interstate commerce. Accordingly, the MCS-90 Endorsement provides coverage for the collision at issue in the underlying action.

NCC's argument for the adoption of the "trip-specific" analysis in a case such as this where the Trucking Agreement was procured for the transportation of property in interstate commerce would render the clause "and the procurement of that transportation" contained in 49 USCS § 13501, superfluous, void, or insignificant. Such a reading is impermissible under controlling federal case law. *See Duncan v. Walker*, 533 U.S. 167, 174, 121 S. Ct. 2120 (2001) (stating that it is the Court's ". . . duty 'to give effect, if possible, to every clause and word of a statute.' ")(Internal citations omitted).

Furthermore, NCC's criticism of the *Reliance* opinion is greatly exaggerated and misleading. As demonstrated in Plaintiff's Response in Opposition to NCC's Motion for Summary Judgment, each and every case adopting the "trip-specific" analysis is distinguishable from the case at bar on the facts. Some of the cases cited by NCC involved collisions that occurred while the subject truck was not operating in a for-hire capacity. See *Canal Ins. Co. v. Coleman*, 625 F.3d 244, (5th Cir. 2010) (truck driver was returning home from work and trailer was no longer attached); *Martinez v. Empire Fire & Marine Ins. Co.*, 151 Conn. App. 213, 94 A.3d 711 (2014) (truck driver was on an errand to pick up repair parts for the trucking company's other vehicles and therefore not operating in a for-hire capacity); *Brunson v. Canal Ins. Co.*, 602 F. Supp. 2d 711 (D.S.C. 2007)(the truck driver was on a personal errand to try and sell the truck); and *Northland Ins. Co. v. Top Rank Trucking of Kissimmee, Inc.*, 2013 U.S. Dist. LEXIS 130961 (M.D. Fl. 2013)(the truck driver was using the truck on a personal errand to pay his electric bill).

In other cases, the "procurement" analysis used in the *Reliance* opinion was not even criticized at all. *See Lyons v. Lancer Ins. Co.*, 681 F.3d 50 (2nd Cir. 2012)(recognizing *Reliance*'s "procurement analysis" and factually distinguishing it from the case *sub judice*: neither rejecting nor criticizing the ruling *Reliance*); and *Century Indem. Co. v. Carlson*, 133 F.3d 591 (8th Cir. 1998) (making no mention of the "procurement analysis" but adopting a broad approach to the interstate commerce analysis).

And other cases had no occasion to conduct a procurement analysis because there were no facts suggesting that the subject vehicles were being operated under a lease involving interstate commerce. See *Canal Ins. Co. v. J. Perchak Trucking, Inc.*, 2009 U.S. Dist. LEXIS 28932 (M.D. Pa. 2009); and *Gen. Sec. Ins. Co. v. Barrentine*, 829 So. 2d 980 (2002).

Other cases are so factually dissimilar they hardly bear mentioning. *See Nat'l Specialty Ins. Co. v. Martin-Vegue*, 644 Fed. Appx. 900 (11th Cir. 2016)(an opinion involving the identification of the proper defendant); and *Kolencik v. Progressive Preferred Ins. Co.*, 2006 U.S. Dist. LEXIS 24855 (N.D. Ga. 2006)(involving a trucking company that was not even authorized to transport property in interstate commerce).

NCC also incorrectly argues that coverage under the MCS-90 Endorsement is unavailable because the federally imposed limit of financial responsibility has been satisfied by K&K Trucking's liability insurance policy. This argument runs contrary to binding case law from the U.S. Court of Appeals for the Fourth Circuit. As noted in *Canal Ins. Co. v. Distribution Servs.*, 320 F.3d 488, 490 (2003), ". . . the MCS-90 endorsement creates a suretyship by the insurer to protect the public when **the insurance policy to which the MCS-90 endorsement is attached otherwise provides no coverage to the insured.**" (Emphasis added). In the present case, it is undisputed that FTL's liability policy, to which the MCS-90 Endorsement is attached, provides no

4

coverage for the collision in the underlying action. Thus, the fact that K&K Trucking's liability policy has already tendered limits is completely irrelevant to the question of coverage under the MCS-90 Endorsement.

Furthermore, West Virginia law makes it perfectly clear that the indemnity provision and relevant portion of the insurance provision contained in the Trucking Agreement is void and unenforceable. According to W. Va. Code § 24A-6-7(a):

> Notwithstanding any provision of law to the contrary, a provision, clause, covenant or agreement contained in, collateral to or affecting a motor carrier transportation contract entered into on or after the first day of July, two thousand six, **that purports to indemnify, defend or hold harmless, or has the effect of indemnifying, defending or holding harmless, the promisee from or against any liability for loss or damage resulting from the negligence or intentional acts or omissions of the promisee is against the public policy of this state and is void and unenforceabie.**

Emphasis added. Article 9 of the Trucking Agreement purports to obligate K&K Trucking to indemnify FTL from all claims, demands, suits, etc., regardless of whether or not said claims, suits, demands, etc., are occasioned by FTL's own negligence. *See* [Doc. No. 26-5] at p. 5. Article 10 of the Trucking Agreement goes even further by requiring K&K Trucking to name FTL as an additional insured on K&K Trucking's liability policy. *Id.* at pp. 5-6, and 15. Compliance with Article 10 was a condition precedent to the commencement of work under the Trucking Agreement. *Id.* at pp. 5-6. Because the Trucking Agreement's indemnity provision and relevant portion of the insurance provision violate West Virginia law, FTL cannot claim coverage under K&K Trucking's liability insurance policy.

Finally, there is no "circle of indemnity" in this case. Contrary to NCC's assertions, Plaintiff never agreed to reimburse FTL for insurance payments made to her on behalf of FTL's insurer. As explained in Plaintiff's Response in Opposition to NCC's Motion for Summary Judgment, Plaintiff was not even aware of the existence of the MCS-90 Endorsement when she

entered into the Settlement Agreement. See Doc. No. 32 at pp. 11-13. According to Syllabus Point

2 of *Triad Energy Corp. of W. Va., Inc. v. Renner*, 215 W. Va. 573, 600 S.E.2d 285 (2004), "[a]

meeting of the minds of the parties is a sine qua non of all contracts." Furthermore:

> The meeting of the minds requirement has been recognized by this Court as
> specifically applicable to settlement agreements. *See, Riner, supra*, 211 W.Va. at
> 144, 563 S.E.2d at 809; *State ex rel. Evans v. Robinson*, 197 W.Va. 482, 475 S.E.2d
> 858 (1996), cert. denied, 519 U.S. 1121 (1997), "**a court may only enforce a
> settlement when there has been a definite meeting of the minds.**" 197 W.Va. at
> 485, 475 S.E.2d at 861. In *O'Connor v. GCC Beverages*, 182 W.Va. 689, 691, 391
> S.E.2d 379, 381 (1990), this Court stated: "It is well understood that 'since a
> compromise and settlement is contractual in nature, a definite meeting of the minds
> of the parties is essential to a valid compromise, since a settlement cannot be
> predicated on equivocal actions of the parties." 15A C.J.S. Compromise &
> Settlement, sec. 7(1) (1967)"

As stated in *Messer v. Huntington Anesthesia Group, Inc.*, 222 W. Va. 410, 418, 664 S.E.2d 751

(2008), "[t]he contractual concept of 'meeting of the minds' or 'mutual assent' relates to **the**

**parties having the same understanding of the terms of the agreement reached**. See 17 C.J.S.

Contracts § 35 (1999)." (Emphasis added.)

In the present case, NCC's right of reimbursement against FTL for any payments made

pursuant to the MCS-90 Endorsement was not disclosed to Plaintiff prior to the execution of the

Settlement Agreement. Nor was it included within the explicit terms of the Settlement Agreement.

In fact, the reimbursement provisions of the Settlement Agreement specifically mention Plaintiff's

obligation to satisfy subrogation and reimbursement claims from health insurers, Medicare and/or

Medicaid and other government agencies: the Settlement Agreement makes absolutely no mention

of reimbursement rights of the Defendants, *inter se. See* [Doc. 28-10] at p. 3. Accordingly, there

was never a meeting of the minds with regard to NCC's purported reimbursement rights as against

FTL.

Furthermore, NCC's claim that the Settlement Agreement allows NCC to recover the money it pays to FTL under the MCS-90 Endorsement from Plaintiff produces an absurd result in light of the fact that the limited Settlement Agreement specifically provides that FTL is released only beyond the limits of any applicable insurance. "It is not the right or province of a court to alter, pervert or destroy the clear meaning and intent of the parties as expressed in unambiguous language in their written contract or to make a new or different contract for them." Syl. Pt. 3 of *Cotiga Dev. Co. v. United Fuel Gas Co.*, 147 W. Va. 484, 128 S.E.2d 626 (1962); *see also Dunbar FOP, Lodge 119 v. City of Dunbar*, 218 W. Va. 239, 244, 624 S.E.2d 586 (2005) (stating that "[g]enerally, [the Supreme Court of Appeals of West Virginia] will not interpret a contract in a manner that creates an absurd result."). To highlight the absurdity of NCC's argument, K&K Trucking's insurer could, under the reimbursement provision, suddenly seek reimbursement from K&K Trucking for the payment to Plaintiff under K&K Trucking's liability policy. Such a ludicrous interpretation of the reimbursement provisions would render the entire Settlement Agreement illusory and unenforceable.

Additionally, it is the explicit policy of the regulations behind MCS-90 Endorsement to provide a source of recovery for members of the public who are injured by negligent motor carriers where insurance coverage is insufficient to compensate the injuries. Any argument that NCC could recover an MCS-90 payment made on behalf of FTL from Plaintiff runs counter to the public policy behind the regulation. See Syllabus Point 3 of *Finch v. Inspectech*, LLC, 229 W. Va. 147, 727 S.E.2d 823 (2012) stating, in part, that "[w]hen an express agreement is freely and fairly made, between parties who are in an equal bargaining position, and there is no public interest with which the agreement interferes, it generally will be upheld."[2]

---

[2] Additionally, NCC's claimed right of reimbursement is void and unenforceable under W. Va. Code § 24A-6-7(a).

Finally, even if NCC could claim a right of reimbursement under the Settlement Agreement, the made-whole rule would apply and Plaintiff would not be required to reimburse NCC for the payment unless and until she is made whole thereby breaking the alleged "circle of indemnity." As explained in Syllabus Point 3 of *Kanawha Valley Radiologists, Inc. v. One Valley Bank, N.A.*, 210 W. Va. 223, 557 S.E.2d 277 (2001), "[u]nder general principles of equity, in the absence of statutory law or valid contractual obligations to the contrary, an insured must be fully compensated for injuries or losses sustained (made whole) before the subrogation rights of an insurance carrier arise.". The Court went on to state that "[i]ndeed, subrogation is an equitable principle and, as such, the general rules of equity, including the made-whole rule, will apply regardless of whether the subrogation arises from common law or by contract, unless a contrary agreement is clearly and expressly stated." *Id.* at p. 228.

The Settlement Agreement includes no clear and express waiver of the made-whole rule nor would any plaintiff ever agree to such a waiver. Based on the facts and law above, NCC's claim for reimbursement, even if valid, does not preclude application of the MCS-90 Endorsement to the underlying personal injury action.

WHEREFORE, for the foregoing reasons, and those set forth in the Memorandum of Law accompanying Plaintiff's Motion for Summary Judgment and in Plaintiff's Response in Opposition to NCC's Motion for Summary Judgment, Plaintiff respectfully requests that the Court find that the Form MSC-90 Endorsement provides coverage for Plaintiff's claim in the underlying personal injury action and award Plaintiff attorney fees incurred herein.

*Respectfully submitted,*

**PATRICIA A. LYLES,**

**Plaintiff,**

**By Counsel:**

_____s/ *Jason. P. Foster*_____
Scott S. Segal (WV Bar I.D. #4717)
Jason P. Foster (WV Bar I.D. #10593)
**THE SEGAL LAW FIRM**
**A Legal Corporation**
810 Kanawha Boulevard, East
Charleston, West Virginia 25301
Telephone: (304) 344-9100
Facsimile:  (304) 344-9105

9

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

PATRICIA A. LYLES, an individual;
     *Plaintiff*,

v.
                                     **Civil Action No. 2:17-cv-01974**
                                     **Hon. Thomas E. Johnston**

FTL LTD., INC., a West
Virginia corporation; and
NATIONAL CASUALTY COMPANY,
An Arizona corporation,
     *Defendants*.

## CERTIFICATE OF SERVICE

     I, Jason P. Foster, counsel for the Plaintiff, do hereby certify that on this the 28th day of December, 2017, I electronically filed the foregoing *Plaintiff's Reply to Defendant National Casualty Company's Response in Opposition To Plaintiff's Motion for Summary Judgment* using the CM/ECF system which will send notification of such filing to the following counsel of record:

Lee Murray Hall, Esq.
Sarah A. Walling, Esq.
Kierston Eastham Rosen, Esq.
**JENKINS FENSTERMAKER, PLLC**
P.O. Box 2688
Huntington, WV 25726-2688
*Counsel for National Casualty Company*

Thomas H. Peyton, Esq.
**PEYTON LAW FIRM, PLLC**
2801 First Avenue, P.O. Box. 216
Nitro, WV 25143
*Counsel for FTL, Ltd., Inc.*

Scott McMickle, Esquire
**MCMICKLE KUREY & BRANCH, LLP**
200 South Main Street
Alpharetta, GA 30009
 *Counsel for National Casualty Company*

                                           _s/ Jason. P. Foster_
                                    Scott S. Segal (WV Bar I.D. #4717)
                                    Jason P. Foster (WV Bar I.D. #10593)
                                    **THE SEGAL LAW FIRM**
                                    **A Legal Corporation**
                                    810 Kanawha Boulevard, East
                                    Charleston, West Virginia 25301
                                    Telephone: (304) 344-9100
                                    Facsimile:  (304) 344-9105