IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

PATRICIA A. LYLES,

                Plaintiff,

v.                                    CIVIL ACTION NO. 2:17-cv-01974

FTL LTD, INC., et al.,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before this Court are cross-motions for summary judgment filed by Plaintiff Patricia A. Lyles ("Plaintiff"), (ECF No. 26), and by Defendant National Casualty Company ("NCC"), (ECF No. 28). For the reasons explained more fully herein, Plaintiff's motion, (ECF No. 26), is **DENIED**, and NCC's motion, (ECF No. 28), is **GRANTED**.

*I.    BACKGROUND*

This declaratory judgment action arises from a motor vehicle collision between Plaintiff and the driver of a dump truck owned by K&K Trucking, Inc. ("K&K") and leased to Defendant FTL, Inc. ("FTL"). Each trucking company held an insurance policy with NCC as the insurer, and each policy included the MCS-90 endorsement in compliance with federal law. Plaintiff sued K&K and FTL for compensation under these policies and ultimately agreed to a settlement with K&K. Plaintiff asks this Court to hold that the MCS-90 endorsement to FTL's policy provides coverage for the accident.

1

Plaintiff and NCC filed cross-motions for summary judgment on December 7, 2017. (ECF Nos. 26, 28). Plaintiff filed a timely response to NCC's motion, (ECF No. 32), and NCC and FTL each filed timely responses to Plaintiff's motion, (ECF Nos. 30, 31). Plaintiff filed timely replies to the opposition briefs filed by NCC and FTL, (ECF Nos. 33, 34), and NCC timely replied to Plaintiff's opposition, (ECF No. 35). As such, the motions have been fully briefed and are ripe for adjudication.

## II. LEGAL STANDARD

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material when it 'might affect the outcome of the suit under the governing law.'" *Strothers v. City of Laurel*, 895 F.3d 317, 326 (4th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A genuine dispute arises when 'the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *Id.* (quoting *Anderson*, 477 U.S. at 248). "Thus, at the summary judgment phase, the pertinent inquiry is whether there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018) (alteration and internal quotation marks omitted).

"The burden is on the nonmoving party to show that there is a genuine issue of material fact for trial . . . by offering 'sufficient proof in the form of admissible evidence' . . . ." *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016). In ruling on a motion for summary judgment, this Court "view[s] the facts and all justifiable inferences arising therefrom in the light most favorable to the nonmoving party." *Jones v. Chandrasuwan*, 820 F.3d 685, 691 (4th Cir. 2016) (quoting *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 312 (4th Cir. 2013)).

2

## III. ANALYSIS

The facts of this case are largely undisputed. On November 19, 2014, Plaintiff was injured in a motor vehicle accident involving a dump truck. (ECF No. 28-3 at 3, 23–24.) At the time of the accident, the dump truck was hauling materials from a building demolition site in Chapmanville, West Virginia, to a landfill in Charleston, West Virginia. (ECF No. 28-4 at 5–6.) The dump truck's route was entirely intrastate. (*Id.* at 3, 6.)

The dump truck involved in the accident was operated by K&K, (ECF No. 26-9 at 21), pursuant to a trucking agreement between K&K and FTL, (*see* ECF No. 26-5). The agreement, which was executed on April 8, 2014, specifies that K&K will act as FTL's independent contractor to "provide trucking services for the hauling of aggregate materials." (*Id.* at 1, 3, 14.) It also requires K&K to obtain automobile liability insurance coverage in the amount of $1,000,000 and name FTL as an additional insured on the policy. (*Id.* at 5–6, 15.)

To fulfill these obligations, K&K obtained an automobile insurance policy through NCC. (ECF No. 28-1.) The policy named FTL as an additional insured. (*Id.* at 66.) The dump truck involved in the accident with Plaintiff was listed as a covered auto on the K&K policy. (*Id.* at 46.) FTL also carried its own automobile insurance policy through NCC, but the dump truck involved in the accident was not listed as a covered auto on FTL's policy. (ECF No. 4-1 at 19.)

In May 2015, Plaintiff filed a personal injury action against FTL, K&K, and the driver of the dump truck, among other defendants. (ECF No. 28-6 at 7–55.) NCC agreed to defend FTL in the action as an additional insured on the K&K policy. (ECF No. 28-7.) However, NCC denied coverage under the FTL policy because the dump truck involved in the accident was not listed as a covered auto on that policy. (ECF No. 28-9.)

Plaintiff and NCC ultimately settled Plaintiff's claims against FTL, K&K, and the driver of the dump truck for $945,679.55. (ECF No. 28-10 at 2.) The settlement agreement provides that the parties are "release[d] and discharge[d]" from further liability in the action, except that FTL is to remain a defendant "***in name only***, for the sole purpose of Plaintiff attempting to seek additional insurance coverage for the subject accident." (*Id.* at 2, 3–4 (emphasis in original).)

Plaintiff now seeks that additional coverage. She argues that she is entitled to compensation under the FTL policy by way of the MCS-90 endorsement to that policy. The endorsement is required pursuant to the Motor Carrier Act of 1980 ("MCA"). "Congress enacted the MCA, in part, to address abuses that had arisen in the interstate trucking industry which threatened public safety, including the use by motor carriers of leased or borrowed vehicles to avoid financial responsibility for accidents that occurred while goods were being transported in interstate commerce." *Canal Ins. Co. v. Distribution Servs., Inc.*, 320 F.3d 488, 489 (4th Cir. 2003). Accordingly, the MCA imposes a liability insurance requirement "upon each motor carrier registered to engage in interstate commerce." *Id.* (citing 49 U.S.C. § 13906(a)(1)). "To satisfy this insurance requirement, most interstate trucking companies obtain a specific endorsement to one or more of their insurance policies—the MCS–90 endorsement . . . ." *Carolina Cas. Ins. Co. v. Yeates*, 584 F.3d 868, 870 (10th Cir. 2009) (en banc) (citing 49 C.F.R. §§ 387.7, 387.9). The endorsement "creates a suretyship by the insurer to protect the public when the insurance policy to which the . . . endorsement is attached otherwise provides no coverage to the insured." *Distrib. Servs.*, 320 F.3d at 490.

The MCS-90 endorsement provides that the insurer issuing the policy to the motor carrier must "pay, within the limits of liability . . . any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles

subject to the financial responsibility requirements of Sections 29 and 30 of the [MCA]." Fed. Motor Carrier Safety Admin., U.S. Dep't of Transp., Endorsement for Motor Carrier Policies of Insurance for Public Liability Form MCS-90 (Jan. 5, 2017), https://www.fmcsa.dot.gov/sites/fmcsa.dot.gov/files/docs/registration/47236/mcs-90-5-10-18-508.pdf; *see* 49 C.F.R. § 387.15.[1] The insurer is responsible for payment "regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere." Endorsement for Motor Carrier Policies of Insurance for Public Liability Form MCS-90, *supra*. In their cross-motions for summary judgment, Plaintiff argues that the MCS-90 endorsement furnishes compensation for the accident in this case, (ECF No. 27 at 6–9), while NCC contends that it does not, (ECF No. 29 at 7–16).

*A. Accident Occurred During Intrastate Shipment*

NCC first contends that there is no liability under the MCS-90 endorsement for the accident in this case because the dump truck was engaged in an intrastate trip at the time of the accident. According to NCC, the applicability of the MCS-90 must be assessed on a "trip-specific" basis. This Court agrees with NCC.

The MCS-90 endorsement mandates payment by the insurer if three requirements are met: (1) a "final judgment" has been "recovered against the insured for public liability"; (2) the public liability "result[ed] from negligence in the operation, maintenance or use of motor vehicles"; and (3) the motor vehicle involved in the accident was "subject to the financial responsibility requirements of Sections 29 and 30 of the [MCA]." Endorsement for Motor Carrier Policies of

---

[1] This Court refers to the current version of the MCS-90 endorsement because the relevant language is identical to that of the MCS-90 endorsement appended to the FTL policy. (*See* ECF No. 26-11.)

Insurance for Public Liability Form MCS-90, *supra*. The principal issue in this case involves the third requirement. This Court must determine whether motor vehicles are subject to the MCA's financial responsibility requirements generally or whether the specific trip renders those requirements applicable. The text of the relevant statutes and regulations supports the latter interpretation.

The MCA's financial responsibility requirements differ depending on where the motor vehicle is traveling and what it is hauling. Specifically, a motor vehicle is subject to the financial responsibility requirements if it is used by "a motor carrier or private motor carrier" to transport property "in the United States between a place in a State and[] (A) a place in another State; (B) another place in the same State through a place outside of that State; or (C) a place outside the United States." 49 U.S.C. § 31139(b)(1). In other words, the financial responsibility requirements apply when a motor carrier or motor private carrier "operat[es] motor vehicles transporting property in *interstate or foreign commerce*." 49 C.F.R. § 387.3(a) (emphasis supplied). The requirements do not apply to "intrastate commerce" unless the motor carrier "operat[es] motor vehicles transporting hazardous materials, hazardous substances, or hazardous wastes." *Id.* § 387.3(b). Further, if the motor carrier transports hazardous commodities, the minimum levels of financial responsibility are higher than those applicable to non-hazardous property. *Id.* § 387.9.

These differences in the financial responsibility requirements imply that a motor vehicle is not always "subject to the financial responsibility requirements of [49 U.S.C. § 31139]." Endorsement for Motor Carrier Policies of Insurance for Public Liability Form MCS-90, *supra*. For example, a motor vehicle is not subject to these requirements if it is involved in an accident while traveling outside of the United States. *See Lincoln Gen. Ins. Co. v. De La Luz Garcia*, 501

6

F.3d 436, 440–41 (5th Cir. 2007) (interpreting financial responsibility requirements applicable to motor carriers of passengers, which are substantively identical to requirements applicable to motor carriers of property). Whether the financial responsibility requirements apply thus depends on the facts of the accident at issue. Because the MCS-90 endorsement applies only when the motor vehicle involved is "subject to the financial responsibility requirements of [49 U.S.C. § 31139]," Endorsement for Motor Carrier Policies of Insurance for Public Liability Form MCS-90, *supra*, its applicability must be determined according to the circumstances that exist at the time of the accident. *See Canal Ins. Co. v. Coleman*, 625 F.3d 244, 249 (5th Cir. 2010) ("[T]he MCS–90 is a way of conforming with statutory minimum-financial-responsibility requirements.").

Indeed, this is the "majority approach." *Id.* at 251. Under this approach, the MCS-90 endorsement "covers vehicles only when they are presently engaged in the transportation of property in interstate commerce." *Id.* at 249. The endorsement does not provide compensation for every accident involving a motor vehicle operated by a motor carrier or private motor carrier. *See McGirt v. Gulf Ins. Co.*, 207 F. App'x 305, 310 (4th Cir. 2006) (per curiam) (stating that the MCA "seeks to protect the public by guaranteeing some proof of financial responsibility by motor carriers, not by mandating a minimum payment to the injured").

In this case, at the time of the accident the dump truck was transporting materials from a building demolition site in Chapmanville, West Virginia, to a landfill in Charleston, West Virginia. (ECF Nos. 26-8 at 1; 28-4 at 3.) Its route was entirely intrastate. (ECF No. 28-4 at 3.) It did not travel "between a place in a State and[] (A) a place in another State; (B) another place in the same State through a place outside of that State; or (C) a place outside the United States." 49 U.S.C. § 31139(b)(1). Consequently, at the time of the accident, the dump truck was not "subject to the financial responsibility requirements of [49 U.S.C. § 31139]." Endorsement for Motor

7

Carrier Policies of Insurance for Public Liability Form MCS-90, *supra*. The MCS-90 endorsement does not apply to the accident at issue in this case.

Plaintiff, citing *Reliance National Insurance Co. v. Royal Indemnity Co.*, No. 99 cv 10920 NRB, 2001 WL 984737 (S.D.N.Y. Aug. 24, 2001), argues that the MCS-90 endorsement applies in this case because the leasing contract between FTL and K&K contemplated that motor vehicles leased to FTL by K&K would transport property in interstate commerce. (ECF No. 27 at 10–14.) Plaintiff's argument fails for two reasons.

First, the principal issue involving the interpretation of the meaning of "interstate commerce" in *Reliance National* was not whether the MCS-90 endorsement applied to an accident but instead whether the insurer had an obligation to defend or indemnify the employees of its insured. 2001 WL 984737, at *3–4. To determine whether the employees were covered under the policy, the district court first had to ascertain whether certain federal regulations—which defined the term "employee"—applied. *Id.* at *4. It looked to the MCA's jurisdictional grant, *id.*, which provides for jurisdiction "over transportation by motor carrier *and the procurement of that transportation*," 49 U.S.C. § 13501 (emphasis supplied). The district court then held that because "the essential character of the commerce" in the lease agreement used to procure the transportation "was interstate in nature," the federal regulations applied even though the accident occurred during a wholly intrastate trip. 2001 WL 984737, at *5.

However, the district court's analysis in *Reliance National* has no significance in this case because the relevant statute is not the MCA's jurisdictional grant but Section 30 of the MCA. *See* Endorsement for Motor Carrier Policies of Insurance for Public Liability Form MCS-90, *supra*. Section 30 provides for "minimum levels of financial responsibility sufficient to satisfy liability amounts" for liability "*for the transportation of property* by motor carrier or motor private carrier."

8

49 U.S.C. § 31139(b) (emphasis supplied). It does not mention the procurement of transportation. This Court thus agrees with another district court in this Circuit that the *Reliance National* court's interpretation of the scope of the MCS-90 "does not meet the limited scope articulated in [49 U.S.C. § 31139]." *Titan Indem. Co. v. Gaitan Enters., Inc.*, 237 F. Supp. 3d 343, 347 (D. Md. 2017).

Second, even if this Court undertook *Reliance National*'s "essential character of the commerce" inquiry, no interstate commerce occurred under the facts of this case. "Whether transportation is interstate or intrastate is determined by the essential character of the commerce, manifested by [the] shipper's fixed and persisting transportation intent at the time of the shipment, and is ascertained from all of the facts and circumstances surrounding the transportation." *Klitzke v. Steiner Corp.*, 110 F.3d 1465, 1469 (9th Cir. 1977) (emphasis deleted). In other words, "the existence of the requisite interstate nexus may be determined by looking to the intent of the goods' seller or shipper with respect to the goods' destination . . . at the time the transportation commenced." *Lyons v. Lancer Ins. Co.*, 681 F.3d 50, 58 (2d Cir. 2001).

Here, there is nothing in the record to indicate that the shipper of the materials from the demolition site in Chapmanville, West Virginia, intended that those materials be shipped to a final destination other than Charleston, West Virginia. (*See* ECF Nos. 26-8 at 1; 28-4 at 3.) The fact that the trucking agreement between FTL and K&K contemplates occasional interstate transportation of property does not alter the nature of the accident at issue, which occurred during an intrastate shipment.

In sum, this Court agrees with NCC that the applicability of the MCS-90 endorsement must be assessed according to the facts existing at the time of the accident. The endorsement provides compensation only when the motor vehicle involved is "subject to the financial responsibility

9

requirements of [49 U.S.C. § 31139]." Endorsement for Motor Carrier Policies of Insurance for Public Liability Form MCS-90, *supra*. As relevant here, those requirements apply to transportation "in the United States between a place in a State and[] (A) a place in another State; (B) another place in the same State through a place outside of that State; or (C) a place outside the United States." 49 U.S.C. § 31139(b)(1). Because the accident in this case occurred during a trip that neither crossed state lines nor was intended to cross state lines, the MCS-90 endorsement does not apply. Summary judgment in favor of NCC is therefore appropriate.

However, in the interest of thoroughness, this Court addresses the parties' additional arguments in support of their motions for summary judgment.

*B. Compensation Exceeding Levels of Financial Responsibility*

NCC also argues that Plaintiff is not entitled to payment under the MCS-90 endorsement because she has received compensation exceeding the level of financial responsibility required by law. (ECF No. 29 at 15–16.) NCC claims that the $945,679.55 settlement Plaintiff received under the terms of K&K's insurance policy renders the endorsement to FTL's policy inapplicable. (*Id.*) This Court agrees.

The MCS-90 endorsement is triggered when "(1) the underlying insurance policy (to which the endorsement is attached) does not provide liability coverage for the accident, and (2) the carrier's other insurance coverage is either insufficient to meet the federally-mandated minimums or non-existent." *Yeates*, 584 F.3d at 879.[2] "Once the federally-mandated minimums have been satisfied, . . . the endorsement does not apply." *Id.* This is because the MCS-90 is not intended to substitute for the insurance coverage required under federal law; rather, it "creates a suretyship

---

[2] Plaintiff appears to suggest that the MCS-90 endorsement applies in any instance when the underlying insurance policy to which the endorsement is attached does not provide coverage. (*See* ECF No. 34 at 4.) However, that cannot be true under the endorsement's plain language, as explained in III.A.

by the insurer to protect the public" in the event of an injury caused by "negligent authorized interstate carriers." *Distrib. Servs.*, 320 F.3d at 490. A "settlement payment to [the injured member of the public]" serves "the public protection purpose of the MCS-90 endorsement." *Id.* at 493. Here, Plaintiff agreed to settle her claims for $945,679.55, (ECF No. 28-10 at 2), an amount well above the $750,000 minimum level of financial responsibility applicable to this case, 49 C.F.R. § 387.9.

The root of Plaintiff's counterargument is that NCC, as FTL's insurer, cannot benefit from Plaintiff's settlement under K&K's insurance policy because the policy provided coverage only for K&K, not for FTL. (*See* ECF No. 32 at 10–11.) However, this argument discounts the nature of the trucking agreement between K&K and FTL and the settlement under the K&K policy. The trucking agreement required K&K to obtain $1,000,000 of automobile liability insurance and include FTL as an additional insured on the policy. (ECF No. 28-2 at 6–7, 16.) FTL was listed as an insured party on K&K's policy. (ECF No. 28-1 at 66.) Therefore, FTL is entitled to any insurance coverage for the accident that K&K receives under the policy's terms.

Further, the settlement agreement specifies that the parties to the settlement are Plaintiff, K&K, the driver of the dump truck, and FTL. (ECF No. 28-10 at 2.) This suggests that the funds Plaintiff received in the settlement were paid on behalf of FTL as well as K&K. Although the settlement's terms provide that Plaintiff may "attempt[] to seek additional insurance coverage for the subject accident" from FTL, (*id.* at 4), "MCS–90 endorsements are not treated as coverage where *other insurance policies are available* to provide full coverage for the victim's injuries." *Tri-Nat'l, Inc. v. Yelder*, 781 F.3d 408, 415 (8th Cir. 2015) (emphasis in original). "The endorsement is a safety net in the event other insurance is lacking." *Yeates*, 584 F.3d at 878. Because other insurance is available here, and because FTL can be said to have satisfied its

11

obligations to Plaintiff pursuant to the K&K policy on which it was an additional insured, the MCS-90 endorsement does not apply.

Because Plaintiff has been compensated for an amount higher than the minimum level of financial responsibility applicable to the accident with proceeds from an insurance policy that named FTL as an insured, summary judgment in NCC's favor is proper.

*C. "Circle of Indemnity"*

Finally, NCC argues that any payment to Plaintiff pursuant to the MCS-90 endorsement would create a "circle of indemnity" that would effectively result in Plaintiff paying her own judgment. (ECF No. 29 at 16–18.) The terms of the endorsement require "[t]he insured . . . to reimburse the [insurer] . . . for any payment that the company would not have been obligated to make under the provisions of the policy" if not for the MCS-90 endorsement. Endorsement for Motor Carrier Policies of Insurance for Public Liability Form MCS-90, *supra*; *see Yelder*, 781 F.3d at 416. Thus, if NCC tenders payment to Plaintiff under the MCS-90 endorsement to FTL's policy, FTL is required to reimburse NCC for that amount. According to NCC, the "circle" is completed because the settlement agreement requires Plaintiff to indemnify FTL for its payment to NCC. (ECF No. 29 at 16; *see* ECF No. 28-10 at 3 (agreeing to indemnify and hold harmless FTL against "any and all subrogation claims or liens of any kind or claims for reimbursement of any kind").)

Plaintiff argues that she is not required to reimburse FTL for two reasons. First, she asserts that "there was never a meeting of the minds" as to this term because "NCC's right of reimbursement under the [MCS-90 endorsement] was never contemplated during the negotiation of the terms of the Settlement Agreement." (ECF No. 32 at 13.) This argument is clearly without merit. Plaintiff represents that she received FTL's insurance policy with the MCS-90

endorsement on October 17, 2016, two weeks after the parties discussed and prepared a settlement agreement. (*Id.* at 12–13.) On December 7, 2016, NCC's counsel sent Plaintiff's counsel a letter detailing the "circle of indemnity" created by the terms of the MCS-90 and the settlement agreement. (ECF No. 35-1 at 3.) As NCC points out, Plaintiff executed the settlement agreement on January 24, 2017, (ECF No. 28-10 at 5), despite her knowledge—or, at a minimum, her counsel's knowledge—that its terms could render any claim under FTL's policy moot. Plaintiff represents that she revised the terms of the settlement agreement at least twice throughout the parties' negotiations. (ECF No. 32 at 12.) There is no reason why she could not have done so after receiving FTL's policy and being advised of the potential indemnity issue. Instead, Plaintiff executed the settlement agreement without further modification. She cannot now argue that the parties did not contemplate the indemnity term.

Second, Plaintiff contends that the "made-whole" rule applies to preclude any right to reimbursement that NCC possesses. (ECF No. 32 at 14–15.)[3] The made-whole rule provides that "in the absence of statutory law or valid contractual obligations to the contrary, an insured must be fully compensated for injuries or losses sustained (made whole) before the subrogation rights of an insurance carrier arise." Syl. Pt. 3, *Kanawha Valley Radiologists, Inc. v. One Valley Bank, N.A.*, 557 S.E.2d 277, 278 (W. Va. 2001). Plaintiff's obligation to indemnify FTL under the terms of the settlement agreement is not governed by the made-whole rule because FTL is not an insurer, nor does it purport to assert subrogation rights. Moreover, the made-whole rule does not affect FTL's obligation under the MCS-90 to reimburse NCC for any payment NCC might

---

[3] Plaintiff also argues that the provision in the trucking agreement between FTL and K&K requiring K&K to indemnify FTL is invalid under West Virginia law. (ECF No. 27 at 7.) Even if this is true, it has no effect on Plaintiff's obligation in the settlement agreement to indemnify FTL directly. (*See* ECF No. 28-10 at 3.)

tender to Plaintiff because FTL is not an injured plaintiff and NCC's right to reimbursement is a matter of federal law.

Therefore, even if the MCS-90 endorsement applied to the accident, NCC would be reimbursed by FTL under the endorsement's terms for any judgment paid to Plaintiff. Under the terms of the settlement agreement, Plaintiff would then be required to indemnify FTL for that amount. This supports summary judgment in favor of NCC.

### IV. CONCLUSION

For the foregoing reasons, this Court **DENIES** Plaintiff's motion for summary judgment. (ECF No. 26.) This Court **GRANTS** NCC's motion for summary judgment. (ECF No. 28.)

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: September 11, 2018

_____
THOMAS E. JOHNSTON, CHIEF JUDGE